So Ordered.

Dated: April 28, 2023



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Scott W. Charmoli and  Case No. 22-24358-gmh
Lynne M. Charmoli, Chapter 11

Debtors.

Scott W. Charmoli,

Plaintiff,

v. Adv. Proc. No. 22-02130-gmh

Aspen American Insurance Company,

Defendant.

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO DISMISS**

Scott Charmoli, one of the debtors in the underlying bankruptcy case, brought this adversary proceeding seeking a declaration that Aspen American Insurance

Company remains bound by certain insurance policies it issued to him. Aspen moves to dismiss Charmoli's claim, based on its purported rescission of the relevant policies. As discussed in detail below, Aspen's motion is denied because the factual allegations in Charmoli's operative complaint plausibly suggest that Aspen's rescission of the policies was invalid under Wisconsin law.[1]

I

Aspen seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), applicable here by operation of Federal Rule of Bankruptcy Procedure 7012(b), for "failure to state a claim upon which relief can be granted". In deciding such a motion, the court must "assume the[] veracity" of the operative complaint's "well-pleaded factual allegations". *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[2] Briefly stated, those allegations are as follows:

---

1. This court has jurisdiction of this proceeding by operation of 28 U.S.C. §§157 & 1334. The district court has "original . . . jurisdiction of all civil proceedings . . . arising in or related to cases under title 11", i.e., the Bankruptcy Code, including this one. §1334(b). But the district court refers all such proceedings to the bankruptcy court. Order of Reference (E.D. Wis. July 16, 1984) ("[A]ll proceedings . . . arising in or related to a case under title 11 shall be referred to the bankruptcy judges of this District."), https://www.wied.uscourts.gov/general-orders/order-reference; see §157(a) ("Each district court may provide that . . . any or all proceedings . . . arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."); see also 28 U.S.C. §151 ("In each judicial district, the bankruptcy judges . . . constitute . . . the bankruptcy court for that district."). Decisions disagree about whether contests over a debtor's insurance coverage for claims against the bankruptcy estate, like this one, are core proceedings, in which this court may statutorily enter final orders without the parties' consent, or non-core proceedings, in which it may enter only interlocutory orders, absent consent. See §157(b) & (c). Compare *St. Clare's Hosp. & Health Ctr. v. Ins. Co. of N. Am. (In re St. Clare's Hosp. & Health Ctr.)*, 934 F.2d 15, 18–19 (2d Cir. 1991) (per curiam) (holding debtor's insurance coverage dispute to be a core proceeding), with *G-I Holdings, Inc. v. Reliance Ins. Co. (In re G-I Holdings, Inc.)*, 278 B.R. 725, 734–37 (Bankr. D.N.J. 2002) (holding that debtor's insurance coverage dispute was <u>not</u> a core proceeding). And, even if §157(b) authorizes this court to enter a final order in this proceeding, absent the parties' consent, that task may be constitutionally reserved for the district court. See *Stern v. Marshall*, 564 U.S. 462, 482–503 (2011); see also *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015) ("Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge."). But "denials of motions to dismiss are generally not final orders, even in the bankruptcy context." *In re Vlasek*, 325 F.3d 955, 960 (7th Cir. 2003) (quoting *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 864 (7th Cir. 1989)). Therefore, this court's authority to deny Aspen's motion to dismiss is secure.
2. In response to Aspen's motion to dismiss the claim stated in his original complaint, Charmoli filed an amended complaint. ECF No. 29. The filing of an amended complaint ordinarily moots

For years, Charmoli was a licensed dentist who, through Jackson Family Dentistry, LLC, operated a practice in Jackson, Wisconsin. He sold that practice in 2019 and opened another, through Hartford Family Dental Care, LLC, in Hartford, Wisconsin, eight months later. In connection with these practices, Aspen issued three professional-liability insurance policies, covering successive one-year periods from March 1, 2018, to March 1, 2021. In 2021 scores of Charmoli's former patients brought several civil cases against him in the Washington County Circuit Court, alleging that, before and during the periods covered by the Aspen policies, Charmoli harmed them by performing unnecessary dental work. Aspen was a party to each of those actions, beginning in May 2021.

On August 26, 2022, Aspen sent Charmoli a letter stating that "the policies are hereby rescinded on the basis of a material misrepresentation and are deemed void *ab initio* in accordance with Wis. Stat. § 631.11." ECF No. 1-1, at 2.[3] Aspen's rescission letter mentions the civil cases brought against Charmoli by his former patients but primarily focuses on a criminal judgment entered against him the month before.[4] The criminal

---

a pending motion to dismiss, but Aspen opted to have its motion applied to the amended complaint. See ECF Nos. 30 & 32; see also *Doe v. Purdue Univ.*, No. 2:17-CV-33, 2020 WL 1660044, at *1 (N.D. Ind. Mar. 31, 2020) (quoting *Trading Techs. Int'l, Inc. v. BGC Partners, Inc.*, No. 10 C 715, 2010 WL 3272842, at *1 (N.D. Ill. Aug. 17, 2010)) ("[C]ourts routinely deny motions to dismiss as moot after an amended complaint is filed, unless a defendant wishes to apply that same motion to the amended complaint because the amended complaint has not remedied the previous deficiencies."). Accordingly, the amended complaint is the operative pleading for purposes of Aspen's motion to dismiss Charmoli's claim for declaratory relief. See *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 674 (7th Cir. 2019) (quoting *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)) ("Generally, '[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case.'").

3.  Aspen's rescission letter "is directed to [Charmoli] in [his] individual capacity and as the representative of Jackson Family Dentistry LLC and Hartford Family Dental Care LLC" and suggests that each was insured under one or more of the policies. ECF No. 1-1, at 2. Like the parties, this opinion ignores this nuance.

4.  Charmoli filed his amended complaint without exhibits, but he filed Aspen's rescission letter as an exhibit to his original complaint, he refers to it in his amended complaint, and it is central to his claim, so the court may properly consider it in deciding Aspen's Rule 12(b)(6) motion. See *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); see also *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

case against Charmoli started in December 2020, when he was indicted in the United States District Court for the Eastern District of Wisconsin, No. 20-CR-242, on eight counts of health care fraud, in violation of 18 U.S.C. §1347, and two counts of false statements relating to health care matters, in violation of 18 U.S.C. §1035.[5] The case was tried to a jury, which returned its verdict on March 10, 2022, finding Charmoli guilty on several counts, and the district court entered judgment against him on July 18, 2022. Aspen's rescission letter states, "Pursuant to that judgment, [Charmoli] w[as] adjudicated guilty of healthcare fraud and false statements relating to dental procedures in connection with dental crown procedures [he] performed . . . beginning in 2016 and extending for several years thereafter." ECF No. 1-1, at 2.

II

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a facially plausible claim, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that" the plaintiff is entitled to relief. *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. Still, "[d]ismissal is proper if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (quoting *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999)).

---

5. The operative complaint contains few allegations about the criminal case against Charmoli, but the details of that case are a matter of public record and are subject to judicial notice, as Aspen observes in inviting the court to take judicial notice of it. See *Geinosky*, 675 F.3d at 745 n.1; see also ECF No. 40, at 11–12.

A

Aspen contends that Charmoli's complaint fails to state a claim because it is beyond doubt that Aspen properly rescinded the policies for which the complaint seeks a declaration of coverage. Aspen argues that, as a matter of law, it "properly rescinded" the policies "in accordance with Wis. Stat. § 631.11", ECF No. 23, at 1, which entitles an insurer to rescind a policy if the insured makes a representation that he "knew or should have known . . . was false", "[t]he insurer relies on the misrepresentation", and "the misrepresentation . . . is . . . material". Wis. Stat. §631.11(1)(b); see also *Pum v. Wis. Physicians Serv. Ins. Corp.*, 727 N.W.2d 346, 351–52 (Wis. Ct. App. 2007). Aspen contends that, in February 2018, Charmoli "submitted an application" stating that he was not aware of "[a]ny [unreported] situation that could lead to a malpractice suit against [him]". ECF No. 23, at 2–3. This statement was shown to be false, Aspen says, by Charmoli's criminal conviction, specifically on a count "related to a procedure that occurred on November 14, 2017", when, the jury found, Charmoli "falsely advised a patient that a crown procedure was necessary" and did so "knowingly and willfully." *Id.* at 4 (quoting *United States v. Charmoli*, No. 20-CR-242 (E.D. Wis. Dec. 15, 2020), ECF No. 1, at 6). And, argues Aspen, the policies state that they are issued in reliance on the truth of the representations in the application. *Id.* at 3.

In opposing Aspen's motion, Charmoli asserts that, even assuming Aspen had grounds to rescind the policies (which Charmoli disputes), its rescission of the policies was untimely under Wisconsin Statutes section 631.11(4)(b), which generally requires an insurer to provide notice of its intent to rescind a policy within 60 days after it "acquires knowledge of sufficient facts to constitute grounds for rescission of the policy". The operative complaint alleges that Aspen has been a party to each of the civil cases against Charmoli by his former patients, starting in May 2021, and that one of the attorneys that represented Aspen in those cases also represented Charmoli "prior to and during the pendency of" the criminal case against him. ECF No. 29, at 4–7. As a result,

Charmoli argues, if Aspen had grounds to rescind the policies based on his criminal conviction, it knew the underlying facts far more than 60 days before it gave him notice of its intent to do so.

Aspen, in turn, contends that it did not *know* that it had grounds to rescind the policies until Charmoli was convicted *and* a judgment was entered *and* the time to appeal that judgment expired. Before all of that happened, Aspen asserts, it knew only of *allegations* that, if shown to be true, would constitute grounds for rescission of the policies. Aspen argues that the 60-day clock for giving notice of its intent to rescind the relevant policies did not start running "[u]ntil there was a final, unappealed judgment" in the criminal case against Charmoli because, until then, "it was not conclusively established that [Charmoli]'s representation on the [insurance] Application was false." ECF No. 23, at 8. Before then, Aspen says, it "only knew that there were mere ***allegations*** that might support rescission if judgment were entered." ECF No. 40, at 1.

When Aspen acquired the requisite knowledge to start the 60-day clock running would seem to be an issue of fact that the court cannot resolve on a motion to dismiss under Rule 12(b)(6).[6] To decide this issue for Aspen now—that is, to determine that until less than 60 days before August 26, 2022, Aspen lacked knowledge of sufficient facts to conclude that it had grounds to rescind the policies, because it issued them in reliance on a material misrepresentation Charmoli made in his application—the court would have to deny (or seriously discount) the truth of the complaint's well-pleaded

---

6. Under Wisconsin law, "whether an issue presents a question of fact or a question of law is in itself a question of law." *State v. Byrge*, 614 N.W.2d 477, 486 (Wis. 2000) (citing *Crowley v. Knapp*, 288 N.W.2d 815, 819–20 (Wis. 1980)). The Wisconsin Court of Appeals has described "the distinction between questions of fact and questions of law" as follows: "Propositions of fact are descriptive; conclusions of law are dispositive. Propositions of fact state history; conclusions of law assign legal significance to that history." *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 672 N.W.2d 105, 109 (Wis. Ct. App. 2003) (quoting Clarence Morris, *Law and Fact*, 55 Harv. L. Rev. 1303, 1329 (1942)), aff'd in part, rev'd in part on other grounds, 682 N.W.2d 857 (Wis. 2004). Under those principles, what facts Aspen knew and when it acquired knowledge of those facts are questions of fact; which of those facts, if any, suffice to constitute grounds for rescission of the policies under section 631.11 is a question of law.

allegations, especially that counsel for Aspen participated in the criminal case against Charmoli; construe the complaint in the light most favorable to Aspen; and deny Charmoli the benefit of favorable inferences. No part of that is permissible. See, e.g., *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (quoting *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010)) ("[E]valuating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in her favor.").

To avoid this obvious outcome, Aspen goes further, arguing that, under a proper construction of section 631.11(4)(b), it *could not* have acquired the requisite knowledge to trigger the 60-day clock until Charmoli's "misrepresentation on the policy application [wa]s conclusively determined based on a finding of criminal liability". See ECF No. 40, at 1. Aspen contends that even knowledge of the jury's verdict is not conclusive enough; a judgment must be entered, and the time to appeal from it must run before it can be said to have acquired the necessary knowledge. But Aspen's proposed construction of section 631.11(4)(b)—that the 60-day clock starts running only when the insurer knows sufficient facts to constitute grounds for rescission of a policy *and* those facts have been "conclusively determined" in a criminal case (or, perhaps, by some other binding proceeding)—is not permitted by Wisconsin's principles of statutory construction.

The starting point—and often the stopping point—for interpreting Wisconsin's statutes is their text. *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 681 N.W.2d 110, 124–26 (Wis. 2004). Section 631.11(4)(b) states, in relevant part, as follows:

> If after issuance of an insurance policy an insurer acquires knowledge of sufficient facts to constitute grounds for rescission of the policy under this section . . . , the insurer may not rescind the policy . . . unless the insurer notifies the insured within 60 days after acquiring such knowledge of its intention to . . . rescind the policy . . . , or within 120 days if the insurer determines that it is necessary to secure additional medical information.

The statute plainly provides that an insurer may rescind a policy only if it notifies the insured of its intent to rescind "within 60 days after" it "acquires knowledge of sufficient facts to constitute grounds for rescission of the policy"—"or within 120 days if the insurer determines that it is necessary to secure additional medical information." *Id*. To be clear, the statute sets a deadline by which the insurer must give notice of its intent to rescind a policy, and it sets that deadline based on when the insurer "acquires knowledge of sufficient facts to constitute grounds for rescission". *Id*.

Reading the statute as Aspen proposes—such that "acquires knowledge of sufficient facts to constitute grounds for rescission" means "acquires knowledge of sufficient facts to constitute *conclusive* grounds for rescission" or, perhaps, "acquires knowledge of sufficient facts that *both* constitute grounds for rescission *and* have been conclusively determined"—renders meaningless the statute's final provision, which extends the 60-day period to 120 days "if the insurer determines that it is necessary to secure additional medical information". §631.11(4)(b). If the statutory period begins only when an insurer learns facts that *conclusively* establish grounds for rescission, then the 120-day period would never apply: how could an insurer have *conclusive* knowledge, triggering the 60-day clock, but still need "*additional . . . information*"? *Id*. (emphasis added). Such a construction ought to be avoided if it can be. See *Marotz v. Hallman*, 734 N.W.2d 411, 418 (Wis. 2007) (citing *Janssen v. State Farm Mut. Auto Ins. Co.*, 643 N.W. 2d 857, 860 (Wis. Ct. App. 2002)) ("In interpreting a statute, courts give effect to every word so that no portion of the statute is rendered superfluous.").

Aspen reasons that if the insurer is aware of facts only *suggesting* that the insured made a misrepresentation, it cannot be said to have the requisite knowledge (i.e., that there *are* grounds for rescission); the insurer must "**actually know**[] there was a misrepresentation". ECF No. 40, at 6. There is something to this: knowing that there *may*

*be* facts constituting grounds for rescission seems not to satisfy the statute.[7] But how certain must the insurer be before the 60-day notice period begins? Aspen's answer seems to be that it was on the clock only once it eliminated all possible doubt: "the only logical conclusion when applying Wis. Stat. § 631.11(4)(b) to the facts here", Aspen argues, "is to find that the 'knowledge of sufficient facts' did not occur until the Criminal Action was conclusively decided and not appealed." *Id.* at 7–8. Aspen contends that only by adopting its approach to construing "knowledge of sufficient facts to constitute grounds for rescission" under Wisconsin Statutes section 631.11(4)(b) can one avoid substituting speculation for knowledge:

> Certainly, once the jury returned a guilty verdict, it was more likely than it was before the verdict that judgment would ultimately be entered against [Charmoli]. But ***how*** likely would be nothing more than speculation. Undoubtedly, some criminal convictions are set aside after post-trial motions or reversed on appeal. Whether that would happen here was anyone's guess. Forcing an insurer to pinpoint the exact moment in the underlying action where the likelihood of a judgment passed some arbitrary threshold for "sufficient facts" is an impossible burden and could not have been the intent of Wis. Stat. § 631.11(4)(b). Under these unique circumstances, it is much more logical to draw a bright-line rule that, until there is a final judgment that establishes the insurer's right to rescind, the clock does not start running.

---

7. Still: Before rescission (and notice thereof) was governed by section 631.11, the Wisconsin Supreme Court, applying equitable doctrines of estoppel and laches—e.g., that "[a]n insurer cannot unreasonably delay manifesting to its insured, or to an injured third party, that it intends to assert a policy defense"—held that an insurer "acted within a reasonable time" when it rescinded a policy "approximately six weeks" after "it *first had reason to believe* a misrepresentation had been made" by the insured and "approximately two and one-half weeks" after it "received official information concerning the misrepresentation". *Ryder v. State Farm Mut. Auto. Ins. Co.*, 187 N.W.2d 176, 179–80 (Wis. 1971) (emphasis added). Given this preceding common law, it is hardly "absurd" to think that section 631.11(4)(b) might require an insurer to act on information that it considers to be less than conclusive and to investigate whether it has grounds to rescind a policy once it has reason to believe that it might. See ECF No. 40, at 7 (Aspen argues that it would be "absurd" to read section 631.11(4)(b) to require it "to essentially undertake an independent investigation of the allegations in the Criminal Action to reach its own conclusion as to whether [Charmoli] committed the alleged conduct, and therefore made a misrepresentation on the application.").

*Id.* at 8.[8]

This argument is unpersuasive. For one thing, Aspen's outcome-driven approach does not achieve the certainty that it imagines. Criminal convictions, even those that are not appealed, may still be vacated if shown to have been erroneous or imposed in violation of the Constitution. See 28 U.S.C. §2255; see also *Bousley v. United States*, 523 U.S. 614, 622 (1998) (first quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986); then quoting *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); then again quoting *Murray v. Carrier*, 477 U.S. at 496; and then quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986)). More important, Aspen makes no attempt to explain how its proposed reading of the statute can be applied both generally and reasonably, in context, as Wisconsin caselaw requires. *Kalal*, 681 N.W.2d at 124 (first citing *State v. Delaney*, 658 N.W.2d 416, 419 (Wis. 2003); then citing *Landis v. Physicians Ins. Co. of Wis.*, 628 N.W.2d 893, 898 (Wis. 2001); and then citing *Seider v. O'Connell*, 612 N.W.2d 659, 669–70 (Wis. 2000)). As explained above, Aspen's proposed reading renders inoperable the statute's final provision, extending the notice period to 120 days if an insurer that actually knows sufficient facts to rescind a policy concludes that it needs more medical information to resolve doubts or eliminate inconsistencies before giving the insured notice that it intends to rescind the policy.[9] Just as problematic is Aspen's suggestion that this court should apply "a

---

8. Section 631.11(4), as originally codified, "d[id] not provide an insurer the right to rescission *ab initio*", at all. *Wis. Hous. & Econ. Dev. Auth. v. Verex Assur., Inc.*, 480 N.W.2d 490, 494 (Wis. 1992); see 1975 Wis. Laws ch. 375 (1976). Section 631.11(4)(b), and its language about rescission, was added about 20 years after the statute was enacted. See 1995 Wis. Act 259 (1996). Thus, the statute is now inarguably more permissive of rescission than it was for the first two decades it existed, however ungenerous Aspen finds this court's construction of section 631.11(4)(b), however "arbitrary" Aspen finds the statute's "threshold", and however "impossible" Aspen finds the "burden" it imposes. ECF No. 40, at 8.

9 . In Wisconsin, "[t]he burden of proof on an insurance company seeking to rescind an insurance contract is the middle burden, that is, clear and convincing evidence as to each element of the statute." *Pum*, 727 N.W.2d at 353 (first citing a comment to Wisconsin's civil jury instructions; and then citing *Lundin v. Shimanski*, 368 N.W.2d 676, 680–81 (Wis. 1985)). Given this, an insurer may acquire knowledge of sufficient facts to constitute grounds to rescind a policy, thereby triggering the 60-day

bright-line rule" because section 631.11(4)(b)'s "sufficient facts" standard is arbitrary. ECF No. 40, at 8.[10] This court cannot substitute its own policy judgment (or Aspen's) for that of Wisconsin's legislature.[11]

Perhaps Aspen's proposed construction requires only the preclusive effect of a judgment of conviction, rather than epistemological certainty. But what would justify that construction? An insurer investigating whether it has grounds to rescind a policy is not restricted in the information it can consider, like the jury in a criminal case is, and nothing in the statute suggests the insurer may await a court's judgment—criminal or otherwise. Whether "an insurer acquires knowledge of sufficient facts to constitute grounds for rescission of [a] policy"—thus triggering the 60-day period within which it must give notice of its intent to rescind—is not inextricably linked to the outcome of any

---

notice period under section 631.11(4)(b), and then determine that it needs additional medical information, thus triggering the enlargement of the notice period to 120 days, if it believes it needs such information to confirm the facts on which it intends to rely in rescinding the policy, it otherwise has doubts about those facts or its knowledge of them, or it feels that such information might be necessary to prevail in litigation.

10. As an aside, expecting insurers to assess the likelihood (or risk) of a particular outcome or event hardly imposes on them "an impossible burden". ECF No. 40, at 8. Doing so is the quintessence of their business. See, e.g., *Black's Law Dictionary* 953 (11th ed. 2019) (defining "insurance" to include "[a] contract by which one party (the *insurer*) undertakes to indemnify another party (the *insured*) against risk of loss, damage, or liability arising from the occurrence of some specified contingency"); Bryan A. Garner, *Garner's Modern English Usage* 609 (5th ed. 2022) ("Usually, *insurance* refers to indemnification against loss", including "against accidents: buildings burning, ships sinking, cars colliding, bodies being injured, and the like."); *Merriam-Webster's Dictionary of Law* 249 (2016) (defining "insurance" to include "coverage by contract whereby for an agreed payment one party agrees to indemnify or guarantee another against loss by a specified contingency or peril"); *Webster's Third New International Dictionary* 1173 (2002) (defining "insurance" to include "the action or process of insuring or the state of being insured usu. against loss or damage by a contingent event (as death, fire, accident, or sickness)", "the business of insuring persons or property", and "coverage by contract whereby for a stipulated consideration one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril"); see also Richard V. Ericson & Aaron Doyle, *Uncertain Business: Risk, Insurance, and the Limits of Knowledge* 15 & 18 (2004) ("[I]t is not news to insurers that they operate in societal conditions of uncertainty. They make decisions on uncertainty as a daily routine. . . . Insurers are risk takers in conditions of uncertainty.").

11. By its plain language, section 631.11(4)(b) requires an insurer, "within 60 days after" it "acquires knowledge of sufficient facts to constitute grounds for rescission of [a] policy", to give the insured notice "of its *intention* to . . . rescind the policy", suggesting that the insurer need not necessarily *perform* its intention (i.e., actually *rescind* the policy) within that time. §631.11(4)(b) (emphasis added). The parties do not meaningfully address this distinction, however, so this opinion does not consider it.

proceeding against the insured. §631.11(4)(b). The only clear effect of the latter on the former is that the insured may be precluded from relitigating the facts that the insurer intends to rely on to rescind the policy. But nothing in section 631.11(4)(b) suggests that its notice clock commences only when the insured is so precluded, that the provision applies in only those limited circumstances, or that an insurer anticipating that it may benefit from such preclusion may simply await its arrival.[12]

B

The text and structure of section 631.11(4)(b) necessitate a two-part inquiry: First, what facts did the insurer know and when did it know them? Second, at what point were the known facts sufficient to constitute grounds for rescinding the policy? Once an insurer knows of such facts, it has 60 days to decide whether it intends to rescind the policy and, if it does, to give the insured notice of that intent (unless, of course, "the insurer determines that it is necessary to secure additional medical information", §631.11(4)(b), in which case the insurer has 120 days to decide how to proceed). This reading of the statute gives full effect to its text and is consistent with its application by the small number of courts that have addressed it. See *Kue v. Farmers New World Life Ins.*, No. 12-C-853, 2013 WL 12111089, at *3 (E.D. Wis. Oct. 2, 2013) ("In other words, once an insurer knows enough that there are grounds for rescission . . . , it then has either 60 or 120 days to notify the insured, depending on whether additional medical records are necessary."); *Broege v. Lincoln Nat'l Life Ins. Co.*, No. 11-cv-566, 2012 WL 13069918, at *5 (W.D. Wis. Apr. 9, 2012) ("[U]nder the statute, the clock begins to run

---

12. As noted above, Wisconsin law places the burden of proof on an insurer to prove the grounds for rescission of a policy. See *Pum*, 727 N.W.2d at 353. In seeking "a bright-line rule", rather than the legislatively enacted standard, Aspen effectively seeks not only relief from this burden, but also validation of its externalizing to the judiciary of costs that, but for the criminal case, it would have incurred investigating whether it had grounds to rescind the policies issued to Charmoli. ECF No. 40, at 8. Adopting Aspen's reading of the statute is troublesome, since it would seem to severely limit the notice-period's application. Moreover, the allocation of the burden of proof strongly suggests that, in Wisconsin, an insurer who wants to rescind a policy is ordinarily expected to quarterback the process—and, if necessary, captain its own defense—not watch from home while the game is played out by others.

when the insurer acquires 'knowledge of sufficient facts to constitute grounds for rescission of the policy.' When these grounds for possible rescission necessitate medical record review, the time on the clock is increased to 120 days total, but the clock is not rewound.");[13] see also *Midwest Com. Funding, LLC v. Cincinnati Specialty Underwriters Ins. Co.*, 399 F. Supp. 3d 736, 746 (E.D. Wis. 2019) (insurer's letter to insurance broker "describing the facts underlying its rescission claim and stating that it 'appear[ed]' that [it] had a basis to rescind the policy" established that insurer had "acquire[d] knowledge of sufficient facts to constitute grounds for rescission of the policy," for purposes of commencing section 631.11(4)(b)'s 60-day period to give notice of intent to rescind); *Progressive N. Ins. Co. v. Bachmann*, 314 F. Supp. 2d 820, 830 (W.D. Wis. 2004) (concluding that insurer was barred by section 631.11(4)(b) from rescinding policy based on insured's misrepresentation of the horsepower of boat engines when insurer failed to give notice of its intent to rescind within 60 days of an inspection that afforded the insurer "reason to believe that defendant had misrepresented his boat's horsepower").

Applying this construction of the statute to the complaint's allegations—read, as

---

13. Aspen initially cited *Broege* in support of its proposition that "it was required to wait until it could 'determine conclusively' the facts, which it could not have done until, at the earliest, July 2022." ECF No. 32, at 6 (citing *Broege*, 2012 WL 13069918, at *4). The court's report and recommendation on Aspen's motion to withdraw the reference pointed out that the cited "determine conclusively" language is from the *Broege* "court's description of *the insurer's argument* in that case, not the court's construction of Wisconsin Statute section 631.11(4)(b)." ECF No. 36, at 6 n.4. This court noted:

> Rather than concluding that section 631.11(4)(b)'s 60-day notice period does not start until the insurer makes a conclusive determination that it has grounds to rescind, the [*Broege*] court reasoned that the time for the insurer to give notice of its intent to rescind started when the insurer learned that it *may* have grounds for recission, even though other information available to the insurer left it unable, at that time, to determine with certainty whether it *did* . . . .

*Id.* This court concluded that the language of *Broege* "suggests a construction of the statute under which an insurer who learns facts that, if true, *would be* sufficient to justify rescission must, within 60 (or 120) days, investigate, decide whether it intends to rescind, and if it does, give the insured notice." *Id.*

Aspen invites, in connection with the district court criminal docket—Charmoli's claim for declaratory relief is facially plausible. See ECF No. 40, at 11–12. The operative, amended complaint alleges that, more than 60 days before Aspen rescinded the relevant policies, it knew of allegations by Charmoli's former patients that he had engaged in malpractice as early as 2016, which, if proven, might show that his 2018 insurance application contained a misrepresentation. The complaint also alleges that one of Charmoli's criminal-defense lawyers was employed by Aspen, supporting a plausible inference that Aspen was aware of developments in the criminal case as they occurred.[14]

Again, what matters in considering a motion to dismiss under Rule 12(b)(6) is not whether the complaint's allegations, if true, establish that the plaintiff is entitled to relief, but whether the allegations are sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)", and whether it is reasonable to expect "that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 555–56 (footnote and citations omitted). Whether Aspen's knowledge of the civil allegations or the criminal indictment against Charmoli was sufficient to trigger section 631.11(4)(b)'s 60-day notice clock, the alleged facts and those properly subject to judicial notice certainly permit a reasonable inference that Aspen acquired knowledge of sufficient facts to constitute grounds to rescind the policies more than 60 days before August 26, 2022, when it did so. Minimally, it is reasonable to think that discovery will lead to evidence showing that, more than 60 days before Aspen gave Charmoli notice of rescission, Aspen knew about some or all of the following: the contents of Charmoli's patient files; the outcome of an investigation conducted by Charmoli's successor in the Jackson dental practice; the evidence the government presented at the criminal trial, including the testimony of

---

14. At a March 6, 2023 hearing in this proceeding, counsel for Aspen acknowledged that Aspen was generally aware of developments in Charmoli's criminal case, though he professed not to know when Aspen became aware of the March 2022 jury verdict.

Charmoli's former dental assistants and experts who opined that the increase in crown procedures was inexplicable in the absence of misconduct; the entry of the March 10, 2022 jury verdict that, Aspen argues, entails that Charmoli made a material misrepresentation on his application for insurance; and that the time to file post-verdict motions passed without Charmoli filing a motion that contested the verdict's findings.

III

For these reasons, IT IS ORDERED that Aspen's motion to dismiss Charmoli's claim for declaratory relief is denied.

#####