UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:

Scott W. Charmoli, and
Lynne M. Charmoli,

        Debtors.

Case No. 22-24358-gmh

Chapter 11

---

Scott W. Charmoli,

        Plaintiff,

v.

Aspen American Insurance Company,

        Defendant.

Adv. Pro. No. 22-02130-gmh

---

**OPINION AND ORDER DENYING REQUEST FOR STAY OF PROCEEDING**

---

      Debtor Scott Charmoli is a former dentist. He commenced this adversary proceeding against Aspen American Insurance Company on behalf of his bankruptcy estate seeking a declaration that Aspen, which issued professional liability policies to Charmoli, is required it to defend and indemnify him against malpractice claims asserted by his former patients. Aspen moved to dismiss the complaint, contending that it rescinded the policies under Wisconsin Statute section 631.11 on grounds established by Charmoli's July 2022 criminal conviction for multiple counts of heath care fraud in violation of 18 U.S.C. §1347 and false statements relating to heath care matters in violation of 18 U.S.C. §1035, all of which is a matter of public record in *United States v. Charmoli*, No. 20-CR-242 (E.D Wis.). Charmoli opposed dismissal, arguing that, at a minimum, he alleged facts plausibly pleading that section 631.11 bars Aspen from rescinding the policies because Aspen failed to give Charmoli timely notice of its intent

to rescind, as required by section 631.11(4)(b). This court denied Aspen's motion to dismiss, concluding that the complaint's factual allegations and the facts of which the court may take judicial notice do not establish, *as a matter of law*, that Aspen's rescission was timely. ECF No. 41.

Aspen moved the district court for leave to appeal this court's order denying its motion to dismiss. ECF No. 44. Aspen now requests that this court stay further proceedings while it awaits action by the district court. ECF No. 50. But the discovery the parties are currently undertaking will be necessary unless Aspen convinces the district court both to allow an interlocutory appeal and to accept Aspen's view that its notice of rescission was timely because, as a matter of law, it could not have had "knowledge of sufficient facts to constitute grounds for rescission", the trigger for section 631.11(4)(b)'s rescission-notice deadline, until the judgment entered in Charmoli's criminal case became non-appealable. The chance that Aspen's interlocutory appeal will be successful is slim, at best. Among other things, the facts Charmoli alleges in the complaint and those of which the court may take judicial notice plausibly "raise a reasonable expectation that discovery will reveal evidence", *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), that Aspen had the requisite knowledge long before the district court entered judgment in the criminal case, making Aspen's request for dismissal of the complaint on rescission grounds inappropriate.

What is more, Aspen has not shown that it will suffer substantial harm by participating in discovery calculated to create a complete record while it awaits the district court's ruling on its motion for leave to appeal. And delay in resolving Charmoli's coverage claim—a claim that, if proven, may provide his bankruptcy estate with a means of defending and resolving the many malpractice claims asserted against it—will likely burden Charmoli's bankruptcy estate, and thus his creditors, with the extra administrative costs resulting from piecemeal appeals.

For these reasons, as well as those explained below, the court will deny Aspen's request to stay these proceedings pending its pursuit of an interlocutory appeal.

I

"The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction": The court must "consider the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *A & F Enterprises, Inc. II v. IHOP Franchising LLC* (*In re A & F Enterprises, Inc. II*), 742 F.3d 763, 766 (7th Cir. 2014) (first citing *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997), then citing *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547–48 (7th Cir. 2007), and then citing *Sofinet v. INS*, 188 F.3d 703, 706 (7th Cir. 1999)). If the movant can demonstrate some likelihood of success and irreparable harm, then the court must evaluate a motion for a stay pending appeal by using "a 'sliding scale' approach . . .; the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa."[1] *In re A & F Enterprises*, 742 F.3d at 766 (first citing *Cavel*, 500 F.3d at 547–48 and then citing *Sofinet*, 188 F.3d at 707); see also *In re Forty-Eight Insulations*, 115 F.3d at 1300–01 ("If the movant . . . does not make the requisite showings [to demonstrate likelihood of success on the merits and irreparable harm, then] . . . the court's inquiry into the balance of harms is unnecessary, and the stay should be denied without further analysis" but "[i]f the movant can make these threshold showings, the court then moves on to balance the relative harms considering all four factors using a 'sliding scale' approach.").

---

1. Before revisions to the Part VIII rules in 2014, a request for a stay pending appeal was governed by Rule 8005. That rule was then revised and renumbered as Rule 8007, but, to the extent applicable here, the governing principles remain the same. See *In re Sternitzky*, 638 B.R. 770, 775–76, 775 n.6 (Bankr. W.D. Wis. 2022).

A

The first issue to be considered, then, is Aspen's likelihood of success on appeal. For Aspen to succeed on appeal it must clear two hurdles: First, it must convince the district court to grant leave to appeal the interlocutory order denying its motion to dismiss and, second, it must persuade that court to reverse that order. Neither is likely.

1

Aspen's motion for a stay simply ignores the first hurdle—that it must persuade the district court to grant leave to appeal. Section 158(a)(3) of title 28 affords district courts "jurisdiction to hear appeals . . . with leave of the court, from . . . interlocutory orders and decrees[] of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of [that] title." In deciding whether to grant leave, district courts generally follow 28 U.S.C. §1292(b)'s permissive interlocutory review standard: "Under that test, an interlocutory appeal is appropriate when it involves a controlling question of law over which there is a substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the termination of the litigation." *Archdiocese of Milwaukee v. John Does* (*In re Archdiocese of Milwaukee*), 482 B.R. 792, 797 (E.D. Wis. 2012), aff'd on other grounds sub nom. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101 (7th Cir. 2014). Granting leave to appeal an interlocutory order is disfavored, however: "Ultimately, the party seeking an interlocutory appeal must show that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Id.* at 797–98 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

It's easy to see why Aspen skips the step of trying to show that its motion for leave to appeal is likely to prevail. No exceptional circumstances justify awaiting entry of final judgment in this adversary proceeding. There is no "controlling question of law over which there is a substantial ground for difference of opinion" and "an immediate

appeal from the order" is extremely unlikely to "materially advance the termination of the litigation." *Archdiocese of Milwaukee*, 482 B.R. at 797.

2

Understanding why Aspen's motion for leave to appeal and its hoped-for interlocutory appeal have essentially zero chance of success begins with an analysis of section 631.11(4)(b) of the Wisconsin Statutes—the linchpin of Aspen's dismissal argument. Section 631.11(4)(b), which all parties agree governs Aspen's right to rescind, provides in relevant part (and with emphasis):

> If after issuance of an insurance policy an **insurer acquires knowledge of sufficient facts to constitute grounds for rescission** of the policy under this section . . . , the **insurer may not rescind** the policy . . . **unless** the insurer **notifies the insured within 60 days after acquiring such knowledge** of its intention to . . . rescind the policy . . . , or within 120 days if the insurer determines that it is necessary to secure additional medical information.

This court denied Aspen's Rule 12(b)(6) motion because it concluded that the complaint plausibly alleges that Aspen failed to give notice of its intent to rescind within 60 days after "acquir[ing] knowledge of sufficient facts to constitute grounds for rescission", as section 631.11(4)(b) requires.

Aspen's view is that the earliest it could have had "knowledge of sufficient facts" of its asserted grounds for rescission was when the district court's judgment convicting Charmoli of a charge based on a prior act of malpractice became unappealable. This view makes irrelevant facts Aspen may have known about earlier, including, as one can plausibly infer from the complaint and from details of Charmoli's criminal case, of which Aspen has invited judicial notice, (1) a jury verdict (reached months before entry of the judgment) finding Charmoli guilty based in part on medically unnecessary treatments occurring before he applied to Aspen for insurance, (2) evidence of

Charmoli's wrongdoing presented at the criminal trial, (3) statements about Charmoli's acts of medically unnecessary treatment asserted in the criminal indictment, and (4) similar allegations made in prepetition state-court actions to which Aspen is a party, all of which Aspen may have known about and independently investigated long before the criminal judgment was entered and became unappealable.

Aspen's appeal can be understood as involving "a controlling question of law", *In re Archdiocese of Milwaukee*, 482 B.R. at 797, only by accepting Aspen's contention that, *as a matter of law*, the earliest it could have had "knowledge of sufficient facts" of its asserted grounds for rescission was when the criminal judgment became unappealable, because, before then, it could not have known the facts with certainty. Wis. Stat. §631.11(4)(b). On that "controlling question of law", however, there is no "substantial ground for difference of opinion"—only one opinion is plausible: Aspen's construction, which reads "knowledge of sufficient facts" to exist only when an insurer knows facts to have been established by a final, unappealable judgment is incorrect. As the *Opinion* explains, Aspen's proposed reading would render part of section 631.11(4)(b)'s text— the provision extending the notice period for an additional 60 days when an insurer acquires "knowledge of sufficient facts" for rescission and "determines that it is necessary to secure additional medical information"—entirely meaningless, making Aspen's reading contrary to Wisconsin's well-established principles of statutory construction:

> The statute plainly provides that an insurer may rescind a policy only if it notifies the insured of its intent to rescind "within 60 days after" it "acquires knowledge of sufficient facts to constitute grounds for rescission of the policy"—"or within 120 days if the insurer determines that it is necessary to secure additional medical information." [Wis. Stat. §631.11(4)(b).] To be clear, the statute sets a deadline by which the insurer must give notice of its intent to rescind a policy, and it sets that deadline based on when the insurer "acquires knowledge of sufficient facts to constitute grounds for rescission". *Id*.

> Reading the statute as Aspen proposes—such that "acquires knowledge of sufficient facts to constitute grounds for rescission" means "acquires knowledge of sufficient facts to constitute *conclusive* grounds for rescission" or, perhaps, "acquires knowledge of sufficient facts that *both* constitute grounds for rescission *and* have been conclusively determined"—renders meaningless the statute's final provision, which extends the 60-day period to 120 days "if the insurer determines that it is necessary to secure additional medical information". §631.11(4)(b). **If the statutory period begins only when an insurer learns facts that *conclusively* establish grounds for rescission, then the 120-day period would never apply: how could an insurer have *conclusive* knowledge, triggering the 60-day clock, but still need "*additional . . . information*"?** *Id.* (emphasis added). Such a construction ought to be avoided if it can be. See *Marotz v. Hallman*, 734 N.W.2d 411, 418 (Wis. 2007) (citing *Janssen v. State Farm Mut. Auto Ins. Co.*, 643 N.W. 2d 857, 860 (Wis. Ct. App. 2002)) ("In interpreting a statute, courts give effect to every word so that no portion of the statute is rendered superfluous.").

ECF No. 41 (the "*Opinion*"), at 8 (emphasis added).

Aspen's stay motion tellingly fails to address this central point. Aspen instead argues that the *Opinion*'s construction of section 631.11(4)(b) "stands in contrast with existing relevant legal authority . . . ." ECF No. 50, at 9. As the *Opinion* explains, however, the decisions discussed by Aspen (*Broege v. Lincoln Nat'l Life Ins. Co.*, No. 11-cv-566, 2012 WL 13069918, at *5 (W.D. Wis. Apr. 9, 2012), and *Kue v. Farmers New World Life Ins.*, No. 12-C-853, 2013 WL 12111089, at *4 (E.D. Wis. Oct. 2, 2013)) are *consistent* with the *Opinion*'s construction of section 631.11(4)(b), as requiring the following two-part inquiry:

> First, what facts did the insurer know and when did it know them? Second, at what point were the known facts sufficient to constitute grounds for rescinding the policy? Once an insurer knows of such facts, it has 60 days to decide whether it intends to rescind the policy and, if it does, to give the insured notice of that intent (unless, of course, "the insurer determines that it is necessary to secure additional medical information", §631.11(4)(b), in which case the insurer has 120 days to decide how to proceed). This reading of the statute gives full effect to its text and is consistent with its application by the small number of courts that have addressed it.

*Opinion*, ECF No. 41, at 12–13 (first citing *Kue,* 2013 WL 12111089, at *3, and then citing *Broege*, 2012 WL 13069918, at *5).[2] And, as the *Opinion* observes, other decisions applying section 631.11(4)(b) do so in a manner irreconcilable with Aspen's proposed construction. *Opinion*, ECF No. 41, at 12–13 (first citing *Kue,* 2013 WL 12111089, at *3, then citing *Broege*, 2012 WL 13069918, at *5, then citing *Midwest Com. Funding, LLC v. Cincinnati Specialty Underwriters Ins. Co.*, 399 F. Supp. 3d 736, 746 (E.D. Wis. 2019), and then citing *Progressive N. Ins. Co. v. Bachmann*, 314 F. Supp. 2d 820, 830 (W.D. Wis. 2004)).

Aspen's stay motion also states without elaboration that the *Opinion*'s construction of section 631.11(4)(b) "stands in contrast with . . . the intent of the statute." ECF No. 50, at 9. But, as the *Opinion* explains, its reading of the statute is consistent with Wisconsin common-law limitations on an insurer's assertion of defenses, including rescission:

> Before rescission (and notice thereof) was governed by section 631.11, the Wisconsin Supreme Court, applying equitable doctrines of estoppel and laches—e.g., that "[a]n insurer cannot unreasonably delay manifesting to its insured, or to an injured third party, that it intends to assert a policy defense"—held that an insurer "acted within a reasonable time" when it rescinded a policy "approximately six weeks" after "it *first had reason to believe* a misrepresentation had been made" by the insured and "approximately two and one-half weeks" after it "received official information concerning the misrepresentation".

*Opinion*, ECF No. 41, at 9 n.7 (quoting with added emphasis *Ryder v. State Farm Mut.*

---

2. Moreover, as the *Opinion* explains, *Broege* does not support Aspen's view that section 631.11(4)(b)'s 60-day notice period commences only when the insurer makes a conclusive determination that it has grounds to rescind: "*Broege* 'suggests a construction of the statute under which an insurer who learns facts that, if true, *would be* sufficient to justify rescission must, within 60 (or 120) days, investigate, decide whether it intends to rescind, and if it does, give the insured notice.'" *Opinion*, ECF No. 41, at 13 n.13 (quoting court's Report and Recommendation on Defendant's Motion to Withdraw the Reference, ECF No. 36 at 6 n.4).

*Auto. Ins. Co.*, 187 N.W.2d 176, 179–80 (Wis. 1971)). Aspen does not address the common-law principles that preceded the statute, nor does it address the fact, also described in the *Opinion*, that "[s]ection 631.11(4), as originally codified, 'd[id] not provide an insurer the right to rescission *ab initio*', at all" and that "[s]ection 631.11(4)(b), and its language about rescission, was added about 20 years after the statute was enacted" and "[t]hus, . . . [is] now inarguably more permissive of rescission than it was for the first two decades it existed . . . ." *Opinion*, at 10 n.8 (quoting *Wis. Hous. & Econ. Dev. Auth. v. Verex Assur., Inc.*, 480 N.W.2d 490, 494 (Wis. 1992)) (first citing 1975 Wis. Laws ch. 375 (1976), and then citing 1995 Wis. Act 259 (1996)).

Aspen has thus not identified "a controlling question of law over which there is a substantial ground for difference of opinion". *Archdiocese of Milwaukee*, 482 B.R. at 797.

3

Aspen also can't show that an immediate appeal is likely to "materially advance the termination of th[is] litigation", another interlocutory review requirement. *Id.* This court's ruling on Aspen's motion to dismiss simply exposes Charmoli's coverage claim to the typical course of litigation—discovery followed by a dispositive motion or trial, with the possibility that the parties may resolve their dispute along the way. That course best affords Aspen the opportunity to prove its consistent refrain that its notice of rescission was timely because before entry of the criminal judgment and Charmoli's failure to appeal, all Aspen knew were unsubstantiated allegations of Charmoli's potentially rescission-justifying conduct; as well as the opportunity to develop and present whatever other defenses Aspen may have to Charmoli's coverage claim. Aspen's preferred course—interlocutory review of whether, *as a matter of law*, it could not have acquired knowledge of sufficient facts to rescind before the criminal judgment became non-appealable—will very likely only prolong this adversary proceeding because, if allowed, it gives rise to multiple paths that could take many months, if not

years, to travel. The journey would begin with the district court having to consider and decide the matter. If the district court affirms this court's ruling, the parties would then re-start discovery, weeks, if not months, later, and Aspen might pursue another interlocutory appeal, this time asking the court of appeals to grant leave to appeal and seek a further stay of proceedings. If the district court adopts Aspen's reading of the statute and dismisses the proceeding, then Charmoli will likely exercise his right to appeal the district court's final order to the Seventh Circuit. If an appeal reaches the Seventh Circuit, the paths again diverge: that court could rule in Aspen's favor, or it could side with Charmoli, again returning the parties to the bankruptcy court many months later, or, faced with conflicting lower court rulings and a lack of Wisconsin precedent, the Seventh Circuit might certify the issue to the Wisconsin Supreme Court, where, after many more months' delay, the paths would again diverge. All told, the journey could take years.

And traveling these paths, whether they be one or many, will deplete the bankruptcy estate's resources—resources the proposed chapter 11 plan would use to pay the claims of Charmoli's creditors, the vast majority of whom are his former patients allegedly injured by his malpractice. Aspen's unrelenting pursuit of its pre-discovery dismissal theory will require the estate to incur substantial administrative expenses—attorney's fees—to oppose that effort, reducing the amount of estate funds available to pay claims. See 11 U.S.C. §§327, 330, 503(b)(2), 507(a)(2), and 1129(a)(9)(A). Indeed, every dollar that Charmoli spends litigating Aspen's sought-after interlocutory appeal is a dollar his bankruptcy estate can't distribute to former patients and other creditors, regardless of who ultimately prevails in this adversary proceeding.

Why the district court would grant leave to appeal under these circumstances, rather than allow the parties to develop a complete factual record and resolve all disputed issues through settlement, dispositive motion, or trial, while preserving the

parties' rights to appeal any final judgment, is a mystery that Aspen's stay motion tellingly leaves wholly unexplored.

B

In addition to the fact that Aspen's chance of success on its motion for leave to appeal and on the merits of its proposed interlocutory appeal appears to be far less than "substantial", see *In re Forty-Eight Insulations*, 115 F.3d at 1301, Aspen also fails to demonstrate irreparable harm or that any balancing of harms comes out in its favor. Aspen's sole suggestion of harm from the continuation of this adversary proceeding is that it will have to comply with Charmoli's discovery requests, which Aspen labels "irreparable harm". ECF No. 50, at 10 (capitalization and emphasis altered); see also *id.* ("Satisfying these discovery-related deadlines require significant expenditures of time and money by Aspen."). Controlling precedent makes clear, however, that "delay and expense of adjudication are not 'irreparable injury'—if they were, every discovery order would cause irreparable injury." *Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869, 872 (7th Cir. 2011) (first citing *Petroleum Expl., Inc. v. Public Serv. Comm'n*, 304 U.S. 209, 222 (1938); then citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); and then citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980)). And Aspen, an insurance company, is presumably better situated to bear ordinary litigation costs than Charmoli's bankruptcy estate and its creditor beneficiaries. Aspen almost certainly engages in policy-related litigation routinely, incorporating estimates of typical litigation expenses into the premiums it charges for policies. For Aspen litigation is a cost of doing business.

At all events, Aspen has not shown that it will suffer irreparable or even significant harm if it must respond to Charmoli's discovery requests while it pursues an interlocutory appeal. Nor has Aspen shown that any burden it must bear to litigate Charmoli's claims in the ordinary course outweighs the burden on the bankruptcy

estate caused by delaying discovery needed to resolve Charmoli's coverage claim in its entirety while Aspen pursues its request for an interlocutory appeal. Aspen's failure to show such harm or that any balancing of harms weighs in its favor is an independently adequate ground to deny Aspen's request for a stay pending appeal.

II

For these reasons, IT IS ORDERED that Aspen's motion to stay these proceedings while it pursues an interlocutory appeal is denied. The clerk is directed to send a copy of this Opinion and Order to the Clerk of the District Court to supplement that court's record on Aspen's motion for leave to appeal.

June 13, 2023

G. Michael Halfenger
United States Bankruptcy Judge